















TKL    3/6/02    13:27

3:76-CR-00183    USA V. FREE

*2*

*CRMDFT.*

Paul Free
42235-198
US Penitentiary
P.O. Box 7000
Florence, CO.
81226
Pro se

FILED

02 FEB 19 AM 9: 16

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA NUNC PRO TUNC

JAN 1 4 2002

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Respondent | ) | |
| | ) | |
| V. | ) | Case No. 76-0183 |
| | ) | |
| PAUL EDWIN FREE, | ) | |
| Petitioner | ) | |

### Motion for Writ of Error Coram Nobis/Audita Querela
### to Vacate and Expunge Conviction, Remand for Resentencing or
### Evidentiary Hearing or such relief as this court deems appropriate

NOW COMES Paul Edwin Free, petitioner pro se, who, under

28 U.S.C. §1651 et seq., invokes this court's jurisdiction to hear

this matter and requests that the relief be granted in the interest

of justice. Further, Movant requests that these pleadings be reviewed

under the lesser standard for pro se briefs as per **Haines v. Kerner,**

404 U.S. 519 (1972) (Pro se litigant's pleadings are to be construed

liberally and held to less stringent standard than formal pleadings

drafted by lawyers.)

## BRIEF IN SUPPORT

Petitioner has completed serving the sentence imposed. Because a petition for the writ of error coram nobis is a collateral attack on a criminal conviction, the time for filing a petition is not subject to a specific statute of limitations. **United States v. Morgan,** 346 U.S. at 507, 74 S.Ct. at 250 (coram nobis petition allowed "without limitation of time"); **Hirabayashi v. U.S.,** 828 F.2d 591, 605 (9th Cir. 1987).Rather, the petition is subject to the equitable doctrine of latches. Id. at 605; **Telink Inc. v. U.S.,** 24 F.3d 42 (9th Cir. 1994); **Werner v. U.S.,** 188 F.2d 266,268 (9th Cir. 1951); **Yasui v. U.S.,** 772 F.2d 1496, 1499 (9th Cir. 1985). Petitioner submits that the delay in asserting this claim, as will be shown below, is excusable and the government is not prejudiced by the delay.

To qualify for coram nobis relief, a petitioner must demonstrate the following four factors:

1) a more usual remedy is not available.

2) valid reasons exist for not attacking the conviction earlier

3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and

4) the error is of the most fundamental character.

**Hirabayashi v. U.S.,** 828 F.2d 591 (9th Cir.)

### 1) A More Usual Remedy Is Not Available

Petitioner is no longer in custody; therefore 28 U.S.C. §2255-Motion to Vacate-is not available. The Writ of Error Coram Nobis, under the "All Writs Act" (28 USC 1651 et seq.) is the only available remedy to correct a constitutionally infirm sentence that is causing adverse consequences today. **Puente v. U.S.,** 667 F.2d 141 (5th Cir. 1982), **U.S.**

1

Petitioner only recently learned, while at trial in the 1994 case that holds him in prison now, that his two codefendants received the misdemeanor as he has promised, that his felony conviction was never changed to a "time served-misdemeanor" as he was led to believe it would be and only recently did he learn that, despite the court's and other inmate's saying to the contrary...the writ of error coram nobis still exists in the criminal arena. (Free once asked his mother to call this court and she was told that the writ no longer is viable- an apparent reference to the writ being abolished in the civil courts.) It would have been impossible for Free to have known these things before. It also would have been unreasonable for Counsel to have raised Ineffective Assistance of Counsel claims on himself. Since Free was sentenced to three years in the other case, Counsel may have felt there was no reason to ask the court here to honor the previous offer of "time served". No one could have seen into the future and known that this conviction would be used, almost twenty years later, as an enhance- ment, to raise Free's 20 year sentence to a mandatory minimum "Life with No Parole."

Petitioner NEVER would have pled guilty if he had known he was not going to receive the promised sentence. Instead, he would have insisted on going to trial where a jury may have, under the circum- stances, acquitted him or, at most, found him guilty of a misdemeanor. The marijuana involved here belonged to the other two individuals and came from the same Mexicans who where responsible for obtaining the marijuana in the other case...it was part of the same load...the only part that ever made it into the United States. Here Free only rented the hotel room where they were arrested because he had been separated

3

from his wife.  He allowed Johnson to stay there while he went
out to dinner with his with and with whom he spent the night.
Johnson invited Shaw and numerous others over to party in the
hotel room (including the CI) and it was he who made arrangements
for the marijuana to be delivered there.  Free came back the next
day to check out and was arrested along with the others when the
police came.

This court has jurisdiction under the All Writs Act to hear
this matter and correct this wrongful conviction.  **Chacon v. Wood,**
34 F.3d 1459 (9th Cir. 1994) (We have repeatedly affirmed the pre-
sumption that collateral consequences flow from any conviction and
have found the presumption to be irrebuttable in this day of federal
sentencing guidelines based on prior criminal histories, federal
career criminal statutes, and state repeat-offender provisions)
(internal quotations ommitted.)

### 3)ADVERSE CONSEQUENCES

Until his arrest in 1994, petitioner had not been arrested
for anything except traffic violations since this 1976 case- a
span of 18 years.  During that time he went back to college (at
age 40) and graduated with a B.S. in Biology. Within two weeks
of graduation he began the program to obtain the California State
Teacher's Credential...to teach high school Sciences.  He was in
the final months of the program when arrested in 1994.  The dis-
trict and appellate courts in Michigan refuse to acknowledge the
documents and affidavits from San Diego State University and the
other evidence (see attached) that <u>conclusively</u> show that Free is
actually innocent of the charged crimes. Therefore, this writ has
become the sole means to prevent a manifest injustice.

4

Free's ten-year sentence in the 1994 case was enhanced, once for the 1975 conspiracy case to 20 years, and again by the case at bar to Life without Relief (Parole). Had Free received the promised "time served" here he would not have received the Life sentence but twenty years...for the enhancement in the conspiracy case... a case where Free pulled out of the conspiracy before any marijuana was obtained. The boat went back to the U.S.A. empty; the deal was called off. Months later the Mexicans, all by themselves brought about one-hundred pounds of the load into this country. It was a part of that load that Johnson had in the hotel room that they were arrested with in this case.

Free believed his attorney in this case when he said he would receive a sentence of "time served" in exchange for a plea of guilty. It was understood that, after the conspiracy case was over,the sentence would be changed. It never was. Free only learned that it never was on December 13, 1994, the day before the government produced its first witness, when Counsel informed the court:

> My understanding was he [Free] had one prior felony conviction, and therefore, there was an enhancement issue and he would be facing [a] 20 year possible sentence. Then they tell me a few days before the cut off period he has had two prior convictions and that makes him facing possible mandatory life sentence for these convictions.

Free could not have attacked this conviction before as he only learned shortly thereafter about the misdemeanor that his codefendants pled to and the other information contained herein.

5

In August of 2001 the district court in Michigan remanded that Free be resentenced in light of the U.S. Supreme Court's ruling in **Apprendi v. New Jersey,** 530 U.S. 466. (In the 1994 case). However, that district court, the District Court for the Eastern District of Michigan, Southern Division has held, in both **Jackson v. U.S.,** 129 F.Sup.2d 1053 (2000) and in **U.S. V. Goode,** 143 F.Sup.2d 817 that "a sentencing judge's finding quantity and type by a preponderance of the evidence does not violate Apprendi." Jackson, at 1060. The court overlooked all the information on Free's actual innocence. Since Free's Motion for Reconsideration, supra, was not reviewed on the merits...it could not have been or the court, in view of the overwhelming evidence of innocence, would have vacated the conviction...Free is still a career criminal with a life sentence. The wrongful conviction here has caused much prejudice.

The trial errors in this 1976 case violated the double jeopardy, ex post facto, equal protection, due process, cruel and unusual punishments and effective assistance of counsel clauses of the Fifth, Sixth, and Eighth Amendments to the United States Constitution. As a result, petitioner's conviction here should should be vacated, the indictment dismissed or the case consolidated with the other case (No. 75-1124), petitioner granted an evidentiary hearing to resolve any disputed facts, a new trial, allowed to plea to a misdemeanor transportation/aiding and abetting or what other relief this court deems appropriate.

Citing C.bron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed2d 917 (1968), **Hirabayshi,**supra, held that a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged

6

conviction. 888 F.2d at 606. (We have repeatedly reaffirmed the
presumption that collateral consequences flow from any criminal
conviction," and the government carries the  burden of disproving
this presumption.)Id.

### 4)FUNDAMENTAL ERROR

This is a case wherein Counsel misinformed petitioner--or
may have been misinformed himself--about the consequences petitioner
would suffer in exchange for his guilty plea.  It matters not that
Counsel was mislead. It was his duty to secure the promised deal
at sentencing or, at least, postconviction (after the other con-
spiracy case had been resolved). It should not have mattered that the
conspiracy case resulted in a sentence of three years and then
removing the three year sentence here may have appeared fruitless;
the collateral consequences linger to this day and are having a
profound effect on his client.

Not only was Counsel ineffective for nor securing the deal
his client had been promised, it could also be said, with some
authority, that petitioner's plea was not and could not have been
"knowing" nor "intelligent" but was coerced and involuntary. See
**U.S. V. Brown,** 117 F.3d 471 (11th Cir. 1997) (misinformation given
to defendant made his plea involuntary); **U.S. V. Gonzalez,** 113 F.3d
1026 (9th Cir. 1997) same; **Matysek V. U.S.,** 339 F.2d 389, 395 (9th
Cir. 1964) same.

A plea agreement is interpreted under the law of contracts.
It is subject to de novo review. Contracts can be written, oral
and implied. Petitioner gave up fundamental legal rights in exchange
for the terms of the plea agreement. The government was bound to
specific performance on their part as was the court in enforcing

7

this contract. That plea agreements are governed by the law of contracts is well established.  In **Santabello v. New York**, 404 U.S. 257, 30 L.Ed.2d 427, 92 S.Ct. 495 (1971), the Supreme Court held, in an opinion by Chief Justice Burger, that (1) in expressing the unanimous view of the court, the disposition of criminal charges by agreement between the prosecution and the accused-- which was an essential component of the administration of justice to be encouraged when properly administered--must be attended by safeguards; that when a guilty plea rested in significant degree on a promise of the prosecutor, so it could be said to be part of the inducement, **such a promise must be fulfilled**. This concept has been further expanded in the federal courts of appeal e.g. **U.S. V. Keller**, 902 F.2d at 1393 (9th CIr. 1993) (Plea agreements are contractual in nature) (citing U.S. V. Reed, 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986)); **U.S. v. De LaFuente**, 8 F.3d 1337 (9th Cir. 1993) (To determine whether a plea agreement has been violated, the Court must look to what the parties **reasonably understood to be the terms of the agreement**.) Here, petitioner was promised time served: the four or five months he had served and was sentenced to three years in prison. For this reason the conviction should be reversed.

Defense Counsel provided misleading information to petitioner to induce a guilty plea; as such, petitioner's plea could not have been "knowing and intelligent" and Counsel's performance fell below what one would expect of a competent attorney. Petitioner was duped into pleading guilty. The government should be held to specific performance of their agreement--petitioner should be allowed to plead guilty to a misdemeanor or the charge dismissed.

8

Whether an attorney provided ineffective assistance is reviewed on a two-part test passed down by the U.S. Supreme Court in **Strickland v. Washington**, 466 U.S. 668, 687-88, 694, 104 S.Ct. 2052, 2064-74, 80 L.Ed.2d 674 (1984) wherein a petitioner must establish (1) that Counsel's advice and performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for Counsel's errors, he would not have pleaded guilty but would have insisted on going to trial. See **Hill v. Lockhart**, 474 U.S. 52, 88 L.Ed.2d 203, 106 S.Ct. 366. Petitioner submits that is the case here. As the Ninth Circuit ruled, in **Dillon v. U.S.**, 307 F.2d 445 (1962):

> A plea of guilty induced by promises not intended to be kept would violate due process, and a sentence based upon such a plea could not stand.
>
> Harmless error rule does not apply to the law of contractual plea agreements. **U.S. v. Johnson**, 187 F.3d 1129 (9th Cir. 1999) accord **U.S. v. Mondragon**, 228 F.3d 978 (9th Cir. 2000)
>
> Any errors in a guilty plea hearing are reversable unless shown to be harmless. **U.S. v. King**, 257 F.3d 1013 (2001)
>
> District court has broad discretion in fashioning remedy for government's breach of plea agreement. **U.S. v. Chiu**, 109 F.3d 624 (9th Cir. 1997).

Petitioner was severly prejudiced by Counsel's erroneous misrepresentations; therefore, his performance was unreasonable and fell below professional standards and deprived his client of his right to effective assistance of counsel as guaranteed by the Sixth Amendment. Had they not occurred petitioner would have received time served or insisted on going to trial where he very well may have received an acquittal or much less than the three years he got and would not now have a Life sentence. See **U.S. v. Khalaf**, 116 F.Sup.2d 210; **Hendrson v. Morgan**, 426 U.S. 637; **Gaddy v. Linahan**, 780 F.2d 935; **Estate of McKinney v. U.S.**, 71 F.3d 779.

9

Petitioner should have been sentenced as a misdemeanant for the lesser included offense of possession of a controlled substance and received the time served sentence as promised. No one decided that Free possessed the marijuana "knowingly and intentionally" with the intent to distribute it beyond reasonable doubt. The Sixth Circuit ruled that a man who sold a "rock" of crack cocaine to an undercover agent in a bar and then who ran as agents tried to arrest him outside(dropping 162 rocks weighing 15.9 grams)should have been sentenced as a misdemeanant and not a felon. They reasoned that a jury could find him guilty only of simple possession. See **U.S. v. Sharp,** 12 F.3d 605 (1993). In 1991 the Tenth Circuit dealt with a **case similar to** that here. In **U.S. v. Puryear,** 940 F.2d 602, the defendant was indicted for conspiracy to sell three ounces of crack. Puryear was remanded to be resentenced as a misdemeanant for simple possession...the same charge Free was told he was pleading guilty to.

For the reasons stated herein, petitioner's conviction should be vacated and expunged or, in the alternative, petitioner should receive remand for resentencing as a misdemeanant, an evidentiary hearing to resolve any facts or issues in dispute or any such relief this court, sua sponte, deem appropriate.

Respectfully submitted under penalty of perjury and signed this 7th day of February 2002.

Petitioner's signature: _Roy free_ _____

_Subscribed and
Sworn before me
on this 7th day of february, 2002
Juanita McCul_

**9/3/02**

10

Paul Free 42235-198
USP-HS  PO BOX 7000
Florence, CO. 81226
Petitioner, pro se.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

PAUL EDWIN FREE

    Petitioner

                               Civil Action No. 99 CV 73082 DT

                               Criminal No. 94-80095

V.                               Honorable Avern Cohn

UNITED STATES OF AMERICA

    Respondent

## MOTION FOR RECONSIDERATION OF THE COURT'S ORDER

    NOW COMES Petitioner, **Paul Edwin Free, pro se,** who respect-
fully requests this Honorable Court under Fed.R.Civ.Proc. Rules 52(b),
59(e), and/or 60(b) to clarify the law and this court's rulings, to
address each issue raised in Petitioner's Motion to Vacate proceed-
ings, including Petitioner's Objections to Magistrate's Report and
Recommendation (Objections to MJRR) filed in the above referenced
cause of action under 28 U.S.C. §2255 (§2255 Motion) so that there
is a fully developed record by each claim by this court rendering a
reasoned analysis of law and fact so that the court of appeals can
make a fully fleshed determination upon review without remand for
further proceedings in the interest of judicial economy and in the
interest of justice due to the extraordinary circumstances evinced
below.

## REASONS FOR GRANTING THE REQUEST

Petitioner insists Reconsideration is necessary to correct clear legal error and to prevent a manifest injustice in that Mr. Free is actually innocent, his claims are meritorious, and, as the following show, this court was mislead by fraud and deception while Petitioner's claims and authorities were summarily overlooked in that his various briefs were not reviewed on their merits or the law was misapplied/misunderstood. Had these errors not occurred, the outcome would have been different and Your Movant would not be sitting in prison with a life sentence for crimes he can prove he is innocent of.

As a pro se litigant, untrained and unfamiliar with legal processes, Petitioner Free begs this Court's indulgence and asks that this motion be "liberally construed" per Haines v. Kerner, 404 U.S. 519, 520 (1972) and further, if by chance there is noticed some critical defect(s) of form or pleadings herein, Mr. Free hereby Moves the court for a thirty (30) day Extension of Time to appropriately file or make necessary changes.

This court issued an order on August 13,2001 stating: "Petitioner's application for a writ of Habeas Corpus is DENIED to the extent that he seeks to have his conviction vacated. The case is remanded to the magistrate judge for a Report and Recommendation (MJRR) with respect to reconsideration of Petitioner's sentence. Id. at III.

This Court adopted the magistrate's Report and Recommendation. Petitioner had filed two requests for Extension of Time to file his (Petitioner's pro se) Objections to (MJRR). This Court GRANTED both motions. See Docket Nos. 1092, 1094, 1102, 1107. This Court has filed all Petitioner's briefs in this case.

1

In Petitioner's <u>Objections</u> to (MJRR) he submitted documented facts and case law that conclusively show the magistrate's findings of fact and conclusions of law were erroneous as well as the government's theories absolutely impossible.

This Court failed to review Free's <u>Objections</u> to (MJRR) because: "Both Free and his lawyer filed separate objections to the MJRR. Because Free objects to "each and every statement made" in the MJRR, the Court addresses only objections filed by Free's attorney." Id. at n.1.

Mr. Free did say he objected to "each and every statement made" in the MJRR on the first page; however, he also conceded that, on page 8 of her Report, the magistrate was correct in her legal analysis of his claim that the sentencing court was in error when it used a prior felony against the defendant that was over fifteen years old.  Free conceded that the magistrate was correct and he was wrong.  That she was wrong in the rest of her analysis will be made quite clear below. Petitioner, in **his** <u>Objections</u> filed a 78-page brief that included three exhibits and numerous cites to supporting case law as well as testimony direct from court transcripts that show that the magistrate's conclusions of law and findings of fact are erroneous; therefore, the MJRR should not be accepted and Petitioner's <u>Objections</u> should be reviewed by a district court judge ( an "Article III" (U.S. Constitution[al] Judge).

Petitioner's <u>Objections</u> to MJRR is a more reasoned analysis and must be reviewed by a district court judge under Fed.R.Civ.Proc. Rule 8(b)(4): "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made"; thus, Petitioner is entitled to an adjudication of the disputed issues by an Article III judge of

court. See **U.S. v. Johnson**, No. 99-20810 (5th Cir. 7/13/01)

Your Movant is neither a licensed nor trained attorney. He **is innocent** of the crimes charged and can prove so if (and when) someone reads the briefs he has filed. Petitioner did not receive a fair trial nor the Assistance of Counsel the Constitution guarantees. Since appointed counsel failed to raise (these) meritorious issues at trial nor on direct appeal, and Petitioner has just become aware of them, Petitioner must raise them now or they will be forever lost. See §2255/ 2244 and Antiterrorism and Effective Death Penalty Act (AEDPA).

By stripping Movant of the right to be heard, to deny him a fair determination on the merits continues to keep an innocent man in prison for ever (life) and makes him run the judicial gauntlet naked--vulnerable and unable to protect nor defend himself. That the magistrate misunderstood the law and facts, that Free's issues are, by law, meritorious is well evinced in Petitioner's Objections. For this Court's convenience, the following is a **summary** of the facts and issues raised  Petitioner submits the magistrate overlooked. To deny a full adjudication on the merits violates due process and equal protection rights guaranteed by the U.S. Constitution.

First of all, Petitioner's §2255 Motion contains an affidavit from a San Diego State University professor (original available upon request) stating his records show Mr. Free was in his class, signed forms etc (it was the first day of classes that summer) on the **EXACT DAY AND TIME** (June 1, 1993) the government claimed at trial Free had been hundreds of miles away committing crime.  Thus, Free's counsel was ineffective for not investigating his client's alibi nor available witnesses (Lillie and Diaz, infra.)

This information would tend to support Petitioner's point
that, since he could not have been with Shepherd et. al that Mr.
Shepherd committed perjury at trial when he told the jury that Free
was his friend "Paul" who went with him to Mexico, Arizona, the States
of Washington and Michigan etc.  Contrary to the magistrate's position,
case law supports Petitioner's position that, for these reasons, his
conviction should be reversed. But it doesn't end here, there's much
more below. (For a clear and detailed look at this issue please refer
to Petitioner's §2255 Motion pp 1-9, especially Exhibits 1,2,and 5)(for
this Court's convenience the Three-page Affidavit from Dr. Pehrson
has been reproduced herein as Appendix A.

    Secondly, codefendant Antonio Diaz, at a sentencing hearing one
week after the jury's verdict, told the court that he had just met
Free "for the first time" in the marshal's lock up and that Free is
not the person named "Paul" that he hired to committ the charged
offenses e.g. the person with whom Diaz went with (along with Shepherd)
to Mexico. the Arizona border. the States of Washington and Michigan
where they picked up marijuana and transported it to various locations.
This would seem to corroborate Free's positions that he was in Dr.
Pehrson's class, is not the person named "Paul" who committed the
crimes Free has been found guilty of and that counsel was ineffective
for not bringing this information to the jury. See §2255 Motion p9-11.

    Third(ly), codefendant Robert Lillie,independently from Diaz,
sew the defendant in the Wayne CO. Jail months before trial began
and told attorneys,  who relayed the message to Free's attorney, that
Paul Free, Petitioner herein, is not the person named "Paul" with whom
he went (with Shepherd et. al)to transport marijuana.  Counsel failed

4

to interview this man who was available before trial nor did he
secure his testimony before the jury when other attorneys subponaed
him.  When counsel did say he would want to examine him the judge then
threatened Mr. Lillie with "further prosecutions in other jurisdic-
tions" if he were to tell the jury about things (trips with "Paul")
that were not trips that were in his plea agreement. Lillie had
signed a plea agreement, a contract, that stated he must testify if
called by the government.  The judge (Gilmore) "scared [Lillie] off
the stand."  See pp 11-14 of §2255 Motion. For this Court's conven-
ience. pp 9-11 and 11-14 have been reproduced herein as Appendix B--
the in-court testimony (Lillie's letter to the court and Diaz' coll-
oquy with the court).  Thus. Free's Constitutional right to present
witnesses on his behalf was clearly violated and the magistrate was
in error to overlook such violation(s). See §2255 Motion re: **Webb v.
Texas**. This is further (overwhelming ?) evidence that Free is not
the "Paul" who did what he has been convicted of and the indictment
must be dismissed; for, inter alia, how can Free now call Lillie
to testify (at a new trial) since the judge scared him;his testimony
could not ever be as "full and free" as it would have been the day
he volunteered to tell the truth but was told if he did he would be
doing time in state prisons concecutive to his federal sentence. Mr.
Lillie was Free's sole defense witness. The jury never heard the truth.
There is more.

Fourth(ly), On Feb. 9. 1994, Douglas Shepherd was arrested and
this was just two (2) weeks after he had helped "Paul" et.al "switch"
the load from his motorhome to another after they moved it from the
Mexican border to near Los Angeles. California.  Shepherd,in his DEA
interview, told how they had stopped and talked while getting gas

and how he spoke to "Paul" then and while they sat at the same table
eating meals. When asked to describe "Paul" Shepherd said he was:

> " a white male, blond hair, age 35 years, HT 5' 10", average
> build."

That description does not match Petitioner's who has dark brown
hair, is 6'2" tall and, at that time, was 44 years old and weighed
200 pounds! (Shepherd also identified the female as Sumpter's wife
Diana Sumpter who had more felony charges pending against her than
any of the other conspirators but had all charges dropped when her
husband agreed to testify. Sumpter's mother's charges were dropped
at that time too.) The description Shepherd gave seems to match that
of Curtis Oppedahl, who was acquitted at trial. Counsel failed to
challenge Shepherd with this information; had he done so Free may
not have been convicted.  Counsel was ineffective under **Strickland**.
See §2255 Motion p 1-4 as well as pp 16,17 and especially Exhibit
7B.  For this Court's convenience, these pages have been reproduced
herein as Appendix C.  Petitioner submits the magistrate overlooked
this too--facts and law that demand a reversal. There's more.

Fifth(ly), Douglas Shepherd was then shown photos taken of
Crehore, Free, Oppedahl, Diaz et. al ( a few days later) and, when
asked to select the photo of the driver he worked with and with whom
he transported marijuana...**he chose the photograph of Curtis Oppedahl!**
Counsel never challenged the government's position with the evidence
he had that clearly exculpated Mr. Free.  How can a magistrate think
this information does not support Free's position that a new trial
is warranted? See §2255 Motion pp 16 and 17 and especially Exhibit
7C reproduced herein as Appendix D.  It gets even better.

Sixth(ly), As mentioned above, at trial the government
claimed that Free had been the driver of the load that had been

6

"switched" from Shepherd's motor home to the one he was driving and then he and Duran drove it to Detroit, Michigam where they say Free checked into a hotel under the name Paul Coin.  As the following **conclusively** demonstrates...**it would have been abso-lutely IMPOSSIBLE for Free to have done what they claim.**

At trial the government had one theory and now they have another. Is it permitted that they can do that? Petitioner submits that **Smith v. Groose,** 205 F.3d 1045 suggests that they can not.

At trial the government claimed that Free had checked into the Raddison Hotel in San Diego, California on the 23rd of January and out on the 28th (1994) and then **drove** to Detroit, Michigan after having stopped  near Los Angeles to "switch" the load. The trip would have taken a minimum of three (3) days.  They went on to tell the jury that Free stayed a few days in Detroit and then flew back to San Diego.

The problem with that theory (that counsel never explained to the jury) is that hotel receipts (Govt's Exhibits 26 [b] and 30 [h] that Free has received since trial show that "Paul Coun" checked into the Ramada Inn (Detroit) on the 23rd of January...**five (5) days before Free checked out of the San Diego hotel and the day before he checked into it!** This could only happen if Free had been able to travel backwards in time.

Now the government has a different theory. Now they say what happened is that Free checked into the San Diego hotel but he did not check out; no, he then **drove** to L.A.  switched the load, and then **drove** to Detroit.  After a few days there they say he then flew back to San Diego and went back to the hotel and acted as if he had never left.  As the man said on T.V.: "Sorry Charlie."

That theory is all wet too. As the table below shows, Free could not have left San Diego on the 23rd, driven across the USA and arrived in Detroit... **the day before he left!**

In addition...Government's Exhibit 30(h) shows Free rented a car from Hertz the day after he checked into the San Diego hotel, he was there,**NOT** driving to Detroit. Free used his California Driver's License **and his VISA CARD!**  Also, hotel phone toll records show Free called his mother every day from the San Diego hotel (as well as other business calls). (The hotel folios are as exhibit in Free's §2255 Motion to Vacate). Petitioner submits that the magistrate overlooked this information that throws doubt ( an understatement) on the jury's verdict and calls into question whether Free received Effective Assistance of Counsel/ a "fair" trial as guaranteed by the Fifth and Sixth Amendments to the United States Constitution.  This is all clear (to the best ability of this pro se litigant) in Petitioner's §2255 Motion (pp 16&18 especially Exhibit 7D as well as in <u>Petitioner's Brief in Support of Motion for Leave to Supplement/Amend His motion to Vacate Filed Under 28 USC §2255</u> (p 11) reproduced, in relevant part, herein:

|  | RADDISON HOTEL<br>SAN DIEGO<br>PAUL FREE | RAMADA INN<br>DETROIT<br>PAUL COIN |
|---|---|---|
| CHECK IN | 1-24-94 | 1-23-94 |
| Hertz | 1-25-94 | |
| CHECK OUT | 1-28-94 | 1-25-94 |

**NO ONE CAN TRAVEL BACKWARDS IN TIME NOR BE IN TWO OR MORE PLACES AT THE SAME MOMENT IN TIME**

8

Petitioner submits that all this shows that the government's positions were accepted without review of Free's facts nor cited and supporting law; in other words: no review on the merits. As the following will show, this can not be; the magistrate can not (also) misstate the facts. Petitioner's §2255 Motion to Vacate must be reviewed by a district judge. **Aguilar v. Texas,** 378 U.S. 108, 111 (1964) (We insist that the magistrate judge perform his [or her] "neutral and detached" function and not serve as a rubber stamp for police.)(Accordingly, "deference to the [] magistrate... is not boundless")(**Weaver,** 99 F.3d 1376 quoting **U.S. v. Leon,** 468 U.S. 897, 914 (1984).

## THE MAGISTRATE MISSTATED THE FACTS

### (A summary only of Petitioner's OBJECTIONS to MJRR)

On p 13 (MJRR) she states: "Sometime during trial, Diaz wrote a letter, to whom it is unclear."

OBJECTIONS p 28: Diaz never wrote any such letter. Trial record produced, supra, shows Diaz, in open court exculpated Free. (The jury never heard, counsel never interviewed Diaz.)

--00--

Pg 12 (MJRR): "The documents petitioner relies on consist of an unsigned letter...and an unsigned affidavit bearing Dr. Pehrson's name that does not contain any substantive information."

Dr. Pehrson signed and NOTARIZED his Affidavit, supra, showing Free **WAS** in San Diego and could not have been with Shepherd et. al.

--00--

Pg 18 (MJRR): "Petitioner also contends that an eyewitness, who he does not identify, provided a description of one of the individuals in the transfer."

Had the magistrate read my §2255 Motion, she would have read the DEA Investigative Report submitted, supra.  The name of the witness, Douglas Shepherd, was mentioned numerous times. See §2255 Motion as well as Petitioner's Objections to (MJRR). See also "Fourth(ly) and "Fifth(ly), supra, Appendix C&D.

9

Pg 18 (MJRR): "The court knows of know authority for the prop-
osititon that counsel has a constitutional obligation to fur-
nish a criminal defendant with copies of relevant documents...
petitioner cites no case law for this and this court finds none."

    The magistrate must have [again] "overlooked" pages of
Petitioner's §2255 Motion e.g. page 29 and 30 as well as **Smith v.
Wainwright**, 741 F.2d 1248 (1984). Had counsel shared that spe-
cific DEA Report with his client and/or the jury there is a
probability Free would not have been convicted. Free could have
shown that on the EXACT dates and times the government claimed
the defendant had been in Michigan and Arizona he had been some-
where else. Free did not know of this Report until Eighteen months
after trial.

--00--

Pg 19 (MJRR): "Petitioner identifies no specific shortcomings in
counsel's closing argument and none are apparent from the record."

    Petitioner's §2255 Brief contains Eleven (11) Grounds spe-
cifically detailing counsel's (Constitutional) Ineffectiveness
at trial and on direct appeal with numerous cites to supporting
case law. Please refer to the first 20 pages of Petitioner's §2255.

    Petitioner's lack of understanding of the magistrate's
motives or failure to report the truth was revealed in his Object-
ions  at page 25:

>     If you introduce three blind men to an
> elephant for the first time, one may say it's
> a snake, another a tree, and the third some-
> thing else entirely. Their blindness excuses
> the errors. There is no excuse for the gov-
> ernment and especially presumably educated
> members of the Bar, in a Democratic Republic,
> to turn a blind eye to the obvious truth, to
> deny justice in such a blatant and egregious
> manner as is being attempted throughout this
> case.

On page 47 of Petitioner's Objections to MJRR Free stated:

    "The judge must have overlooked page 33, Ground J of
Petitioner's §2255 Brief which states:

10

Counsel agreed to produce (to the jury) all
the inconsistent and conflicting testimony
mentioned above in closing argument along
with six pages of contradictions between
witness trial testimony the defendant pro-
vided to him ( defendant made mention of
these six pages of contradictory testimony
at sentencing hearing (6-14-95)).(See exhibit
B). Counsel failed to honor that agreement.

Exculpatory physical evidence was available
as [48] well as information to attack witness
credibility. Trial counsel, for whatever reason,
failed to challenge the government's claims
with the information he knew existed. Coun-
sel's argument, therefore, did not support a reas-
onable defense theory and fell below the ob-
jective standards of reasonableness and amoun-
ted to a deficient performance. There is a
reasonable probability that, but for this
deficiency, the result of the guilt phase
would have been different, that is, the defic-
iency undermines confidence in the outcome
and the defendant should be granted a reversal.

Thus, "specific shortcomings" were **clearly** stated as well
supporting case law that indicate the trial court, appellate court
and the magistrate misapplied law and facts.  Counsel failed to in-
vestigate, to interview available witnesses, to discover law and
facts relevant to sentencing and post conviction issues. See Objec-
tions to MJRR pp 47-60.

Petitioner's Objections to MJRR, because it is a 77 page,
page-by-page analysis of facts and law, should be reviewed by a
district court judge. Petitioner was "locked down" and unable to
get to the law library, typewriter or research materials and asked
his family to ask an attorney to notify the court that an extension
was needed within the deadline. Petitioner himself wrote the court
and received **two (2)** extensions, supra, to file his Objections to MJRR.
If this manifest injustice is not corrected, an innocent man will
remain in prison for the rest of his life. Under the Antiterrorism

11

Paul Free 42235-198

USP-Fls PO Box 7000

Florence, CO- 81226

Feb 10, 2002

Judge Turrentine / Clerk

    Enclosed please find an original plus
3 copies of a Writ of Error Coram Nobis
I wish to file in this court. I hope that
is sufficient + I have done it right. If
not, please contact me at the above address
and grant me the time to make any necessary changes.

               Thank you,

               Paul Free