















JOEH   4/22/02   10:17

3:76-CR-00183   USA V. FREE

*3*

*CRRESPM.*

```
1 │ PATRICK K. O'TOOLE
  │ United States Attorney
2 │ BRUCE R. CASTETTER
  │ Assistant U.S. Attorney
3 │ Chief, Appellate Section
  │ ROGER W. HAINES, JR.
4 │ Assistant U.S. Attorney
  │ Calif. Bar No. 46771
5 │ 880 Front Street, Room 6293
  │ San Diego, CA 92101-8893
6 │ Telephone: (619) 557-6920
```

FILED

02 APR 19 PM 2:47

CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

7 │ Attorneys for Plaintiff
  │ United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 76-CR-0183-HBT |
| Plaintiff-Respondent, | |
| v. | GOVERNMENT'S RESPONSE TO CORAM NOBIS/ AUDITA QUERELA MOTION |
| PAUL EDWIN FREE, | |
| Defendant-Petitioner. | |

Comes Now the plaintiff United States of America, by and through its counsel, Patrick K. O'Toole, United States Attorney, and Roger W. Haines, Jr., Assistant U.S. Attorney, and files the attached response and opposition to Defendant Paul Edwin Free's February 19, 2002, Coram Nobis/Audita Querela Motion. Because the Clerk's and U.S. Attorney's Office records in this 1976 case have been purged, this Response is based on the attached Statement of the Case, Argument and Exhibits.

Dated: April 19, 2002

Respectfully submitted,

PATRICK K. O'TOOLE
United States Attorney

ROGER W. HAINES, JR.
Assistant U.S. Attorney

76cr0183

I

## STATEMENT OF THE CASE

Petitioner Paul Edwin Free seeks a Writ of Error Coram Nobis or Audita Querela to vacate his 1976 conviction for importing marijuana in violation of 21 U.S.C. § 963.  The conviction occurred 26 years ago, and the court files and the U.S. Attorney's Office files for this case have long since been destroyed.  Nevertheless, Free's motion demonstrates on its face that it is meritless.

Free was arrested in 1975 and charged in Case No. 75-CR-1124 with conspiracy to import marijuana in violation of 21 U.S.C. § 963. [Motion at 2.][1]  He was out on bond in that case when he was arrested in the present case, No. 76-CR-0183-T, and charged with importing marijuana in violation of 21 U.S.C. § 963.   [Motion at 2.]

Free alleges that his unnamed defense attorney told him that "in exchange for a plea of guilty he would receive a sentence of 'time served' and be free to go home, on bond in the other case."  [Motion at 2.]  He pleaded guilty, but Judge Turrentine sentenced him to three years in custody. [Motion at 2.]  He did not protest at sentencing, but "[l]ater" asked his lawyer who allegedly told him, "The judge (Turrentine) wants you to stay in jail until the other case is resolved and if you are convicted you will receive the same three years."  [Motion at 2.]  Free acquiesced, and eventually "pled guilty in the other case, and did receive a three-year sentence as the judge here predicted."  [Motion at 2.]

Free did not appeal, explaining that "[s]ince Free was going to prison for three years anyway, getting the three year sentence changed

---

[1]   "Motion" refers to Free's Motion for Writ of Coram Nobis/ Audita Querela.

1 to the promised 'time served' may have appeared fruitless."   [Motion
2 at 2.]

3      Free completed his three-year sentence, was released, and was
4 conviction-free for fifteen years.  However, he apparently continued
5 his drug activities, because in 1993, drug agents discovered that Free
6 had been coordinating marijuana shipments from Mexico through
7 San Diego to Detroit and New York.  Free's activities are outlined in
8 a Sixth Circuit opinion that resulted from his conviction for those
9 activities, United States v. Gaitan-Acevedo, 148 F.3d 577 (6th Cir.
10 1998):

11        Defendant Paul Free frequently coordinated the
       retrieval of marijuana shipments, delivered numerous
12     shipments received from Huerta in Mexico to Sumpter in
       California.1/ [Footnote 1: Free facilitated the retrieval
13     of marijuana shipments in the Arizona desert.]   In July
       1993, Free drove a rental truck from San Diego to Detroit
14     to supply Sumpter with 200 pounds of marijuana from Huerta.
       Sumpter later established a buyer in New York, and in
15     September, 1993, Free transported 250 pounds of marijuana
       from California to New York.  Unable to complete the sale
16     in New York, Free then carried the marijuana form New York
       to Maddox in Detroit, and the sales proceeds back to
17     Sumpter in California.

18        Free made two deliveries to Detroit in January 1994.
       On the first occasion, Free transported 400 pounds of
19     marijuana in a motor home to Maddox's "stash house," and
       returned to California with $350,000 in cash proceeds.  On
20     the next occasion, Free delivered 550 pounds of marijuana
       in a motor home to Detroit, and then flew back to
21     California.

22        Defendant Charles Crehore worked as a courier for
       Free, also transporting marijuana from California to
23     Detroit.  In December, 1993, Free arranged for Crehore to
       deliver more than 400 pounds of marijuana to Detroit by
24     motor home.  One month later, in January 1994, Free had
       Crehore pick up a motor home Free previously left in
25     Detroit after completing a delivery.

26 Gaitan Acevedo, 148 F.3d at 583.  The opinion describes Free's arrest
27 as follows:

28        Shortly after the arrests in Detroit, law enforcement
       officers surveilling Sumpter's house in Coronado,

3

76cr0183

1  California, saw Defendant Free arrive at Sumpter's house,
   load a suitcase into his pickup truck, and then drive away.
2  Officers arrested Free as he drove away from the residence.
   When the arresting officers opened the suitcase, they
3  discovered $60,000 in cash and two semi-automatic handguns.

4  Gaitan Acevedo, 148 F.3d at 584.

5      Thirty-one defendants, including Free, were charged in the

6  Eastern District of Michigan with conspiracy to distribute and possess

7  with intent to distribute more than 1,000 kilograms of marijuana.  Id.

8  at 584.  Free was released on bail and fled to Mexico in January, 1994

9  [id. at 588], but was later apprehended.

10     Free went to trial in December, 1994, and was convicted after an

11 eight-week trial before District Judge Horace Gilmore.  Id. at 584.

12 At sentencing:

13     [t]he district court, using extremely conservative
       estimates for the size of the loads, held Free responsible
14     for eleven instances of drug trafficking involving 1756
       kilograms of marijuana.  In addition . . . the district
15     court found Free to be a "principal supervisor" within the
       conspiracy and a career drug offender.  Free initially
16     qualified for an offense level 32, triggering the statutory
       mandatory minimum sentence of life imprisonment.  The
17     district court, however, enhanced Free's sentence three
       levels for his supervisory role in the conspiracy, and two
18     levels for obstruction of justice.

19 Gaitan-Acevedo, 148 F.3d at 595.

20     Before trial, the government had filed an information pursuant

21 to 21 U.S.C. § 851, charging that Free had two prior drug felony

22 convictions in San Diego in 1976.  [RT 4303;[2/] Exhibit A attached

23 hereto.]  At sentencing, Judge Gilmore found that Free had been

24 convicted of these two priors as follows:

25     [O]n June 21st, 1976 he was sentenced to three years
       custody after conviction of possession of controlled
26

27 _____

       [2/]    "RT" refers to the transcript of sentencing on June 14, 1995
28 in the Detroit Case before Judge Gilmore.

4                                                    76cr0183

1   substance with intent to distribute in the U.S. District
    Court for the Southern District of California, San Diego,
2   76-0183; and on February 28th, 1977 he was convicted of
    conspiracy . . . to knowingly and intentionally import and
3   attempt to import approximately 12,000 pounds of marijuana.
    That was also in the U.S. District Court for the Southern
4   District of California, docket Number 75-1124.   The
    sentence was three years custody, to be concurrent with the
5   sentence given on the prior case, docket number 76-0183.

6   [RT 4304-4305.]

7       These two felony drug convictions required the district court to

8   sentence Free to a mandatory minimum life sentence without release,

9   under 21 U.S.C. § 841(b)(1)(A).   Thus, contrary to the statement in

10  Gaitan-Acevedo that Free's mandatory life-without-release sentence was

11  triggered by his initial offense level of 32 [Gaitan-Acevedo, 148 F.3d

12  at 595], it was in fact based on his two prior felony drug

13  convictions.

14      Free appealed, and his conviction and sentence were affirmed by

15  the Sixth Circuit in a published opinion in Gaitan-Acevedo, decided

16  on May 12, 1998.   Free then filed, through counsel, a 28 U.S.C. § 2255

17  motion in the Eastern District of Michigan making a variety of claims,

18  including that the admission of the present prior drug felony

19  conviction at sentencing violated due process. [Exhibit B at 1.][3/]

20      The matter was referred to a magistrate judge who carefully

21  considered Free's claims and recommended that the motion be denied.

22  District Judge Avern Cohn agreed with the magistrate judge's analysis

23  and denied the motion.   [Exhibit B at 2.]   Thereafter, Free filed a

24  pro se motion for reconsideration, "presenting the same arguments

25  previously considered and rejected by the magistrate judge." [Exhibit

26

27  _____

    [3/]  Exhibit B is District Judge Avern Cohn's October 10, 2001,
28  Order Denying Free's Motion for Reconsideration]

1  B at 2.]   This motion for reconsideration was also denied by
2  Judge Cohn.   Id.

3        Having lost his challenges to his 1994 Detroit conviction, Free
4  has now turned his attention to San Diego.   The present "Motion for
5  Writ of Error Coram Nobis/Audita Querela" was received by the Clerk
6  on January 14, 2002.   The Motion challenges Free's 1976 conviction and
7  sentence for importing marijuana in violation of 21 U.S.C. § 963, on
8  the ground that defense counsel was ineffective in not securing a
9  "time served" sentence, after Free pleaded guilty.   Judge Turrentine
10 allowed the motion to be filed on February 19, 2002, nunc pro tunc to
11 January 14, 2002.   We address Free's claims below.

12                                  II

13                              ARGUMENT

14      A.   FREE'S MOTION IS BARRED BY LACHES

15      Free acknowledges that his motion for a writ of coram nobis is
16 subject to the equitable doctrine of laches.   [Motion at 1.]   Thus,
17 he must show that his 26-year delay in challenging his 1976 sentence
18 is excusable and that the government was not prejudiced by the delay.
19 Telink, Inc. v. United States, 24 F.3d 42 (9th Cir. 1994); Yasui v.
20 United States, 772 F.2d 1496, 1499 (9th Cir. 1995).   He has shown
21 neither.

22      In determining whether the delay is reasonable, it is important
23 to note that if Free were still in custody on the 1976 conviction, the
24 remedy of coram nobis would not be available to him, and he would
25 instead be required to satisfy the requirements for a habeas petition
26 under 28 U.S.C. § 2255.   See United States v. Baptiste, 223 F.3d 188
27 (3d Cir. 2000) (holding that a coram nobis petition cannot be used to

28

                                    6

circumvent the restrictions on section 2255 motions).  That is, he would be subject to the one-year statute of limitations in section 2255, which would bar his claims unless he filed his petition within one year after "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2255.

Free admits in his motion that the facts on which his claim is based were known to him on the day he was sentenced in 1976.  He says:

> Counsel informed Movant that in exchange for a plea of guilty he would receive a sentence of "time served" and be free to go home, on bond in the other case.  However, after entering a plea of guilty the judge sentenced Mr. Free to a term of three (3) years incarceration.  Later, when Free asked Counsel what happened to the promised "time served" he was told:  "The judge (Turrentine) wants you to stay in jail until the other case is resolved and if you are convicted there you will receive the same three years."

[Motion at 2.]  Thus, according to Free's own allegations, he knew that the alleged bargain had not been fulfilled, but decided to acquiesce in the three-year sentence.  Moreover, nineteen years later, when he was being sentenced in the Michigan case on June 14, 1995, he was aware that this prior conviction had become much more important and was the cause of his sentence of life without release under 21 U.S.C. § 841(b)(1)(A).  Yet he still did not file a collateral attack on it.  Significantly, the one-year statute of limitations on habeas cases in 28 U.S.C. § 2255 did not become effective until April 24, 1996, Lindh v. Murphy, 521 U.S. 320 (1997), and thus he would have had almost two years until April 24, 1997, to comply with the limitations period for 2255 motions.  Accordingly, if this were a habeas petition under section 2255, his claims would long since have been barred by the one-year statute of limitations.

7

In addition, the statute that resulted in his life-without-release sentence, 21 U.S.C. § 851, has its own statute of limitations in subsection 851(e), which bars any challenge to a prior conviction that is more than five years old:

> No person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction.

21 U.S.C. § 851(e) (added in 1970).   The Ninth Circuit, along with every other circuit to consider the issue, has found the time bar in section 851(e) to be constitutional.   United States v. Davis, 36 F.3d 1424, 1438-39 (9th Cir. 1994); United States v. Reed, 141 F.3d 644 (6th Cir. 1998); United States v. Prior, 107 F.3d 654, 660-61 (8th Cir. 1997); United States v. Gonzales, 79 F.3d 413, 426-27 (5th Cir. 1996); United States v. Magana, 118 F.3d 1173 (7th Cir. 1997); United States v. Arango-Montoya, 61 F.3d 1331, 1338 (7th Cir. 1995); United States v. Williams, 954 F.2d 668, 673 (11th Cir. 1992).   Section 851(e) "is a reasonable limitation on defendants to effectuate the purposes of sentence enhancement for recidivists and to eliminate a host of problems with respect to ancient or destroyed records."   Reed, 141 F.3d at 652 (citing Gonzales, 79 F.3d at 426) (internal quotation marks omitted).

Of course, section 851 is limited by its terms to the sentencing hearing in which the prior conviction is used as an enhancement. Where, as here, the defendant is challenging his prior conviction directly, the one-year statute of limitations in 28 U.S.C. § 2255 applies. We mention the five year statute only to emphasize that even if Free's challenge to his 26-year-old conviction were judged by the

8

1  more lenient five-year statute in section 851(e), it would be barred
2  by laches five times over.

3      In sum, if Free were still in custody on his 1976 conviction, any
4  collateral attack on that conviction would have been barred in 1997
5  by the running of the one-year statute of limitations in 28 U.S.C
6  § 2255 and by the five-year statute in 21 U.S.C. § 851.  The fact that
7  he was released from custody twenty-three years ago certainly should
8  not give him greater rights than a defendant who is still in custody.
9  Accordingly, this Court should hold that his challenge is barred by
10  laches.

11      The passage of twenty-six years has prejudiced the government.
12  The Court records have been purged, as have the records of the United
13  States Attorney's Office, so the files and records are no longer
14  available.  There is no transcript of Free's Rule 11 proceeding, and
15  no transcript of sentencing, which might shed light on whether any
16  promises were made to induce his plea.  We do not know the identity
17  of the prosecutor nor defense counsel, and even if they could be
18  located, it is unlikely that they would have any recollection of this
19  routine plea a quarter of a century later.  After this much time has
20  passed, the facts simply cannot be accurately reconstructed.  Free has
21  no excuse for his delay in challenging his conviction, and the
22  government has been prejudiced by the passage of time.  Therefore,
23  Free's motion should be barred by laches.

24      B.   FREE FAILS TO SHOW THAT COUNSEL WAS INEFFECTIVE

25      Even if this ourt were to reach the merits, Free's allegations
26  are insufficient to demonstrate that counsel was ineffective.  Free
27  vaguely says defense counsel informed him that he "would" receive a
28

9

1 sentence of "time served."   But he apparently felt that this was
2 simply counsel's "best guess," because he did not object when he was
3 sentenced to three years.

4     A lawyer's reasonable but erroneous sentencing prediction is not
5 ineffective assistance. <u>United States v. Martinez</u>, 169 F.3d 1049 (7th
6 Cir. 1999) (finding no ineffective assistance where the attorney
7 predicted a five year sentence but the judge imposed a 97-month
8 sentence, plus 60 months consecutive on the gun count). <u>See also</u>
9 <u>Taylor v. Reno</u>, 164 F.3d 440 (9th Cir. 1998) (finding no
10 ineffectiveness in counsel's failure to ensure that his client would
11 serve his time in federal custody).

12     Moreover, Free was not prejudiced by counsel's actions, because
13 even if he had received a "time served" sentence, he would be in no
14 better position today, because he would still have been convicted of
15 a "felony drug offense" within the meaning of 21 U.S.C.
16 § 841(b)(1)(A).   Under 21 U.S.C. § 802(13), the term "felony" means
17 "any Federal or State offense classified by applicable Federal or
18 State law as a felony." And 18 U.S.C. § 3559 classifies any offense
19 for which the "maximum term or imprisonment" is less than five years
20 but more than one year, as a Class E felony.   Free admits that his
21 conviction under 21 U.S.C. § 963 "carried a maximum of five (5)
22 years." [Motion at 2.]

23     Perhaps recognizing that "time served" would still have been a
24 felony drug offense, Free adds, almost as an afterthought on page 3
25 of his motion, that he only learned "while at trial in the 1994 case"
26 that "his felony conviction was never changed to a 'time served-
27 misdemeanor' as he was led to believe it would be. . . ." [Motion at

28

76cr0183

3.]  Oddly, this is the first time he uses the word "misdemeanor." He does not mention it in describing his attorney's alleged statement to him earlier.  Nor, in his earlier description of his disappointment at not receiving a "time served" sentence, does he suggest that he expected his conviction to be modified to a misdemeanor, or modified at all.    He later describes the promise as simply "time served" [Motion at 8].   The bottom line is that Free's own allegations make it clear that he knew the judge and prosecutor had not agreed to a "time served" sentence. and that he knew he had received a felony sentence.    Accordingly, his attorney was not ineffective, and his motion should be denied.

## C.   <u>AUDITA QUERELA PROVIDES NO REMEDY HERE</u>

Free mentions the writ of audita querela in the caption of his motion, but never mentions it thereafter.   Therefore, he apparently has abandoned any separate claim for relief under audita querela. This is appropriate, because the writ of audita querela cannot be used if there is another remedy available.    In <u>United States v. Valdez-Pacheco</u>, 237 F.3d 1077 (9th Cir. 2001), the Ninth Circuit held that audita querela could not be used because petitioner had a remedy under 28 U.S.C. § 2255, and that remedy was not inadequate merely because that particular petitioner's motion was barred by the limits on successive motions.    Similarly, in this case, the fact that Free's coram nobis petition is barred by laches does not make the remedy of coram nobis inadequate.  As the Ninth Circuit said in an earlier case, "To recast audita querela as an avenue for purely equitable relief would violate separation of powers."    <u>Doe v. Immigration and Naturalization Service</u>, 120 F.3d 200 (1997) (holding that the writ of

11

audita querela could not be used to vacate an alien's conviction and prevent deportation).

### III

### CONCLUSION

For the foregoing reasons, Free's Motion for a Writ of Error Coram Nobis or Audita Querela should be denied.

Respectfully submitted,

PATRICK K. O'TOOLE
United States Attorney

BRUCE R. CASTETTER
Assistant U.S. Attorney
Chief, Appellate Section

ROGER W. HAINES, JR.
Assistant U.S. Attorney

Attorneys for Plaintiff
United States of America

12

76cr0183

# EXHIBIT  A

95-1758
95-1694

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FILED

SEP · 9 1997

UNITED STATES OF AMERICA,

LEONARD GREEN, CLK

                    Plaintiff,

          v.                          CASE NO. 3
                                      94-80095-4

PAUL FREE, et al.,

                    Defendant.
_____/

                    <u>SENTENCING</u>

          PROCEEDINGS had and taken in the

above-entitled matter before the Honorable HORACE W. GILMORE,

United States District Court Judge for the Eastern District of

Michigan, Southern Division, at U. S. Courthouse, 231 W.

Lafayette, Room 861, Detroit, Michigan, on Wednesday, June 14,

1995, commencing at approximately 2:30 o'clock p.m.

APPEARANCES:

                    RONALD WATER STREET,
                    Assistant U.S. Attorney

                         Appearing for the Government.

                    JOSEPH P. ZANGLIN, ESQ.,

                         Appearing for the Defendant.

                    *    *    *

                                                    1

FREDERICK C. PRATT, CSR-2301      OFFICIAL COURT REPORTER

4302

1                              Detroit, Michigan

2                              Wednesday, June 14, 1995

3                              2:30 o'clock p.m.

4                    *    *    *

5              THE CLERK:  94-80095, United States of America

6      versus Paul Free.

7              THE COURT:  Have Mr. Free step forward.

8              THE CLERK:  Have him step forward.

9              THE COURT:  All right.  I think the record

10     should reflect that I have had a great deal of

11     correspondence on this case.  I want the record to reflect

12     what I have done and then I'll hear from both of you.

13              I have received and read thoroughly the

14     following documents:

15              Presentence report, of course, I have read;

16              I have read Mr. Zanglin's memorandum of law as

17     to sentence;

18              I have read Mr. Zanglin's objections to the

19     presentence report;

20              I have read the -- Mr. Free's response to the

21     second superseding information;

22              I have read the reply to Mr. Free's response to

23     the second superseding information, in addition to the

24     briefs supporting it; and

25              I have read the government's response and brief

                              2

FREDERICK C. PRATT, CSR-2301     OFFICIAL COURT REPORTER

1    in response to defendant's objections to the presentence

2    investigating report.

3          And I think that all the papers -- that's enough

4    papers.  Those are the papers I've had and now read and

5    considered.

6          Now, let's start with how we want to handle this

7    hearing.  You want to deal, first, with the second

8    superseding information?  Or, do you have anything --

9    well, first, do you have anything more you want to say on

10   that, Mr. Waterstreet?

11         MR. WATERSTREET:  On the second --

12         THE COURT:  Maybe better hear from --

13         MR. ZANGLIN:  Nothing further, Your Honor.

14         THE COURT:  What do you have to say?

15         MR. WATERSTREET:  Well, Your Honor, the statute

16   is rather clear -- excuse me.  Ronald Waterstreet

17   appearing on behalf of the United States.

18         The statute's rather clear, Your Honor, that

19   pursuant to 21 U.S.C. 841(b), and Section 851, the United

20   States must provide the defendant notice prior to

21   sentencing of its intent to file a enhanced sentencing

22   upon conviction based upon one or two prior drug felony

23   convictions.

24         THE COURT:  We're talking about 841(b), right?

25         MR. WATERSTREET:  Correct, Your Honor.

3

FREDERICK C. PRATT, CSR-2301      OFFICIAL COURT REPORTER

1          THE COURT:  21 841(b)?

2          MR. WATERSTREET:  Correct.  And the United

3     States did in fact file what it has termed a superseding

4     information, advising Mr. Free prior to trial that the

5     United States was aware that he had two prior felony drug

6     convictions --

7          THE COURT:  I think the record should reflect,

8     so the record is clear, what those felony convictions are.

9          According to the presentence report -- and this

10    is not disputed by Mr. Zanglin in his memorandum, as I

11    recall.  According to the presentence report, page...

12         MR. WATERSTREET:  15, Your Honor, first one

13    appears.

14         THE COURT:  The record here indicates the

15    defendant's had three misdemeanors, which don't count.

16    And then on June 21st, 1976 he was sentenced to three

17    years custody after conviction of possession of controlled

18    substance with intent to distribute in the U.S. District

19    Court for the Southern District of California, San Diego,

20    76-0183; and on February 28th, 1977 he was convicted of

21    conspiracy -- sentenced after conviction -- well, I'm not

22    sure whether by plea or trial, but after conviction of

23    conspiracy to knowingly and intentionally import and

24    attempt to import approximately 12,000 pounds of

25    marijuana.  That also was the U.S. District Court for the

4

1    Southern District of California, docket number 75-1124.

2            The sentence was three years custody, to be

3    concurrent with the sentence given on the prior case,

4    docket 76-0183.

5            Those are the two convictions you're speaking

6    of?

7            MR. WATERSTREET:  That's correct.

8            THE COURT:  So I think we have the two

9    convictions required.

10           Does anyone -- I know you object to it, Mr.

11   Zanglin, but the record is clear.  Do you have anything to

12   say on that?

13           MR. ZANGLIN:  No, Your Honor.

14           THE COURT:  All right.  Now the next question I

15   have is as to the quantity, then I'll hear anything you

16   have to say in addition to what you've presented to me.

17           Last week -- or two weeks ago I sentenced

18   Leonarda Oropeza Arechiga, and one of the issues we

19   discussed and I ruled on in that hearing was the amount of

20   marijuana involved in this conspiracy.

21           My ruling was, after hearing at length from all

22   sides, was that there was not over 3,000 kilograms.  It

23   was between 1 and 3,000, and I sentenced accordingly then.

24           Now, is there any reason we need to go through

25   that again, or can we stand on that?  I had a long hearing

5

# EXHIBIT  B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL EDWIN FREE,
                    Petitioner,

v.                                                    Case No. 99-73082

UNITED STATES OF AMERICA,
                    Respondent.                       Hon. Avern Cohn
_____/

## ORDER DENYING MOTION FOR RECONSIDERATION

This is a habeas case under 28 U.S.C. § 2255. Petitioner Paul Edwin Free

(petitioner), a federal prisoner, claims, through counsel, that he is incarcerated in

violation of his constitutional rights, specifically claiming: (1) trial counsel provided

ineffective assistance; (2) the trial judge abused his discretion by denying petitioner's

request for new counsel prior to trial; (3) the trial was fundamentally unfair; (4) a witness

committed perjury at trial; (5) the admission of petitioner's prior felony drug conviction at

sentencing violated his right to due process; (6) the trial judge fell asleep during trial;

and (7) the prosecutors engaged in misconduct.

The matter was referred to a magistrate judge for a report and recommendation

(MJRR). The magistrate judge carefully considered all of petitioner's claims on the

merits and recommended that petitioner's application for writ of habeas corpus be

denied. Petitioner's counsel and petitioner separately filed objections. The Court

agreed with the magistrate judge's analysis and conclusion regarding petitioner's claims

pertaining to his conviction. Accordingly, the Court adopted the findings and

conclusions of the magistrate judge and denied petitioner's application for writ of

habeas corpus to the extent that he sought to have his conviction vacated. The Court, however, found that petitioner's Apprendi claim warranted a closer review and therefore remanded the case to the magistrate judge for a report and recommendation with respect to reconsideration of petitioner's sentence in light of Apprendi. See Order filed August 13, 2001.

Before the Court is petitioner's pro se motion for reconsideration, claiming that the Court did not consider the his pro se objections to the MJRR[1] and essentially presenting the same arguments previously considered and rejected by the magistrate judge in the MJRR. The Court has now reviewed petitioner's objections to the MJRR and petitioner's motion for reconsideration, and finds that petitioner has failed to demonstrate that the magistrate judge's conclusions were in error. Rather, he simply disagrees with magistrate judge's analysis. Overall, petitioner has not demonstrated grounds for reconsideration. See E.D. Mich. LR 7.1.

ACCORDINGLY, petitioner's motion for reconsideration is DENIED.

SO ORDERED.

AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:     OCT 10 2001
          Detroit, Michigan

---

[1] In a footnote in the Court's August 13, 2001 Order, the Court stated that "[b]ecause Free objects to 'each and every statement made' in the MJRR, the Court addresses only objections filed by Free's attorney."

2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,      )      No. 76-CR-0183-HBT
                               )
                Plaintiff,     )
                               )      CERTIFICATE OF SERVICE
    v.                         )      BY MAIL
                               )
PAUL EDWIN FREE,               )
                               )
                Defendant.     )
_____)

IT IS HEREBY CERTIFIED THAT:

    I am a citizen of the United States over the age of 18 years and a resident of San Diego County, California; my business address is 880 Front Street, San Diego, California 92101-8893; I am not a party at the above-entitled action; and on April 19, 2002, I deposited in the United States mail at San Diego, California, in an envelope bearing the requisite postage, a copy of the Government's Response to Coram Nobus/Audita Querela Motion:

Paul Edwin Free
42235-198
U.S. Penitentiary
P.O. Box 7000
Florence, CO 81226

the last known address at which place there is delivery service of mail from the United States Postal Service.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on April 19, 2002.

                                    _Lynda L. Holly_

76cr0183